# United States Court of Appeals
## For the First Circuit

No. 15-2248

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. MILLÁN-ROMÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Carlos M. Sánchez La Costa for appellant.
Francisco A. Besosa-Martínez, Assistant United States
Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, on brief, for appellee.

April 14, 2017

**BARRON**, **Circuit Judge**.  This appeal requires us to review José Millán-Román's challenge to the 120-month prison sentence that he received after he pled guilty, pursuant to a plea agreement, to two offenses: possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and possession of controlled substances with intent to distribute, in violation of 18 U.S.C. § 841(b)(1)(C).  We affirm.

**I.**

Millán entered his plea in June 2015.  The plea agreement set forth detailed recommendations regarding the sentence.

As to the firearms count, the plea agreement stated that the applicable sentence under the United States Sentencing Commission Guidelines was 60 months of imprisonment -- the statutory minimum sentence for that offense.  See U.S.S.G. §2K2.4(b) (noting that the guideline sentence for a conviction under 18 U.S.C. § 924(c) is the minimum term of imprisonment required by statute).  Nonetheless, the plea agreement recommended an upward-variant sentence of 84 months of imprisonment.  The plea agreement did not give a reason for this upward-variant sentence, but Millán's defense counsel acknowledged at sentencing that the parties had stipulated to a sentence higher than the statutory minimum "knowing that [the sentencing judge] was not going to give him [the statutory minimum]."

Regarding the controlled-substances count, the plea agreement stated that, under the Guidelines, Millán had a base offense level of twelve, but that he was entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1. The plea agreement thus calculated Millán's total offense level to be ten.

The plea agreement did not set forth a criminal history category ("CHC") for Millán. But the plea agreement stated that the recommended sentencing range under the Guidelines would be 6-12 months of imprisonment if Millán had a CHC of I and 8-14 months of imprisonment if Millán had a CHC of II.

The plea agreement then recommended a sentence of six months of imprisonment for the controlled-substance offense. The plea agreement also recommended that this sentence be served consecutively to the 84-month prison sentence for the firearms offense. Thus, the plea agreement recommended a total sentence of 90 months' imprisonment.

On September 22, 2015, the District Court imposed a sentence of 114 months' imprisonment for the firearm offense, and six months' imprisonment for the controlled-substance offense, to be served consecutively, for a total prison sentence of 120 months. The District Court also imposed five years' supervised release.

On appeal, Millán contends that the District Court committed a number of errors -- some of which he characterizes as

procedural and others as substantive -- in calculating his sentence for the firearms count.

## II.

We begin with the claims of error that Millán characterizes as procedural. Because Millán did not object to the District Court's sentencing decision below, our review is for plain error. United States v. Arroyo-Maldonado, 791 F.3d 193, 197 (1st Cir. 2015). Thus, Millán must show (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings. Id.

### A.

Millán argues, first, that the District Court committed procedural error by failing properly to consider mitigating factors as required by 18 U.S.C. § 3553(a). Specifically, Millán contends that the District Court failed to consider that Millán was a first-time offender, that he had no prior adult criminal history, that he was close with his family, that he was employed, and that he helped to support his three-year-old son.

The record makes clear, however, that the District Court was aware of these mitigating factors, as Millán's defense counsel elucidated them at the sentencing hearing. The District Court also expressly noted that Millán "has no criminal record, no

arrests, nothing," and added: "He's a young guy. The amount of drugs he had was small, if you think about it."

The District Court did not expressly mention the particular mitigating factors Millán now identifies on appeal as ones that were overlooked. But, while district courts must consider factors listed in § 3553(a) at sentencing, United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012), "we do not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned." Id. Moreover, we have held that the failure of a district court to "explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored." Id. Thus, Millán does not meet his substantial burden of showing that the District Court plainly erred.

**B.**

Separately, Millán argues that the District Court committed procedural error by justifying the sentence in part by reference to the "Tómbola massacre" -- a 2009 shooting in Sabana Seca, the community in which Millán resided and in which a number of people were killed -- without following the procedure for "bring[ing] [a defendant's] uncharged conduct into play." United States v. Sklar, 920 F.2d 107, 110 (1st Cir. 1990). But the record makes clear that the District Court was not suggesting that Millán

was in any way responsible for the massacre, and so Millán's argument rests on a mistaken premise.

Moreover, we have made clear that, in considering the need for deterrence, see 18 U.S.C. § 3553(a)(2)(B), district courts may take into account not only the need for individual deterrence, but also the need for community deterrence within the defendant's particular community. See United States v. Flores-Machicote, 706 F.3d 16, 22-23 (1st Cir. 2013) (holding that "a sentencing judge may consider community-based and geographic factors" and explaining that "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence"); Lozada–Aponte, 689 F.3d at 793 (noting that sentencing judge's discussion of "incidence of crime in Puerto Rico" was a "permissible [sentencing] consideration"); United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008) (allowing sentencing court "to take into account all of the circumstances under which [the defendant] committed the offense, including the particular community in which the offense arose"). Thus, while we question the weight that may be given to a now seven-year-old incident, the District Court did not plainly err in referencing this incident as part of its more general explanation of the need for community deterrence, given what the District Court perceived to be the scourge of drugs and guns in Puerto Rico.

Millán next contends that the District Court committed procedural error in failing to give Millán an opportunity to address the Court about the Tómbola massacre. See <u>United States v. Berzon</u>, 941 F.2d 8, 18-19 (1st Cir. 1991). We disagree.

The District Court first raised the Tómbola massacre when Millán entered his guilty plea, prior to the sentencing hearing. The District Court asked, "You know for example what happened in Sabana Seca some years ago? The La Tómbola? . . . You know what happened there, how many people were killed?" Millán responded, "Yes," and the District Court stated that the massacre was "the consequence of firearms" like those Millán pled guilty to possessing. Millán neither objected nor sought to address the matter with the Court.

Then, at the sentencing hearing itself, the District Court gave Millán's defense counsel another opportunity to address the Court regarding the massacre:

> **District Court**: Isn't it a fact, sir, that [Sabana Seca] is an area of high criminality where horrible things have occurred in the past? Including the famous case I tried a couple of years ago involving the murder of 13 people, the Alexis Candelario case?
>
> **Defense counsel**: We are aware.
>
> **District Court**: Isn't that a fact?
>
> **Defense counsel**: It is.

Given this record, there is no basis for concluding that Millán was not given an opportunity to address the Tómbola massacre.

**III.**

Finally, Millán brings a claim that he characterizes as substantive. He contends that his sentence is unreasonable because the District Court placed too much weight on the Tómbola massacre, and did so at the expense of considering the particular facts of Millán's conviction. Though Millán characterizes this claim as a claim of substantive error, the case he relies on in making this claim treats this type of error as procedural. See United States v. Santiago-Rivera, 594 F.3d 82, 83 (1st Cir. 2010). So, too, do we. See also Flores-Machicote, 706 F.3d at 22-24 (finding no procedural error where District Court placed great weight on violence in the community but also paid sufficient heed to the facts particular to the defendant's case). Thus, we again apply the standard of review that we use for claims of procedural error that were not raised below -- namely, plain error. See Arroyo-Maldonado, 791 F.3d at 197.

While a court may consider the incidence of crimes in the defendant's geographic community in order to properly weigh the need for community deterrence, "[a] sentencing judge's resort to community-based characteristics does not relieve him or her of the obligation to ground sentencing determinations in case-

- 8 -

specific factors." Flores-Machicote, 706 F.3d at 24 (citation omitted). Accordingly, "[i]t is possible for a sentencing judge to focus too much on the community and too little on the individual." Id.

The District Court here, however, committed no such error. Rather, the District Court discussed the facts of Millán's particular conviction in detail and specifically enumerated each firearm that Millán pled guilty to possessing, stating:

> The firearms were AK-47 type rifle with an obliterated serial number, loaded with 41 rounds, and one in the chamber; a Baretta pistol, nine millimeter, loaded with 11 rounds, and one in the chamber; a Baretta pistol, nine millimeter, bearing whatever serial number, loaded with 11 rounds, and one in the chamber; a Smith and Wesson pistol, caliber -- .40 caliber, loaded with 12 rounds, and one in the chamber, in furtherance of a drug trafficking crime.

The District Court then explained that the 84-month sentence recommended by the parties in the plea agreement did not "seem to correlate with this number of firearms" and the firearms' "deadly fire power."

In addition, the District Court observed that, unless Millán was storing the firearms for someone else, the nature of the firearms suggested that Millán "was involved in big time drug dealing and he understood that he needed all these things to protect these drugs and his business." And the District Court noted that, according to the unchallenged pre-sentence report,

Millán "voluntarily stated to the police, to the agents, that he is indeed a drug dealer." The District Court concluded that the pre-sentence report painted a picture "not of an individual who was storing firearms for somebody else," but "of a man who has no criminal record, who is young, who accepted being a drug dealer, and who had all these guns in reference to his drug trafficking crimes."

Thus, while the District Court noted the massacre in the context of considering the need for community deterrence, it did not do so at the expense of considering the facts of Millán's individual case. Accordingly, Millán has not shown that the District Court erred procedurally.

Millán appears to separately assert that the length of his sentence was substantively unreasonable. The law in our circuit is unsettled as to whether we review claims of substantive error for abuse of discretion or for plain error where the defendant fails to object below. United States v. Arsenault, 833 F.3d 24, 29 (1st Cir. 2016). We need not resolve this question here, as Millán's claim fails even under the more favorable abuse of discretion standard.

"The essence of appellate review for substantive reasonableness is whether the sentence is the product of a plausible . . . rationale and a defensible result." United States v. Rivera-González, 776 F.3d 45, 51 (1st Cir. 2015) (citation

omitted). As discussed above, the District Court articulated a plausible rationale for arriving at its sentence by weighing the relevant facts of the offense and the need for deterrence against the mitigating factors. To be sure, the sentence the District Court arrived at was higher than the statutory minimum of 60 months and the 84-month sentence jointly recommended by the parties. But the District Court was not bound by the parties' recommended sentence. See id. And "a mandatory minimum sentence is just that: the lowest sentence that can lawfully be imposed. A sentencing court may lawfully select a higher sentence up to the statutory maximum (which in [18 U.S.C. § 924(c)] is life imprisonment)." Id. at 51-52. Thus, to the extent that this challenge is preserved, it, too, fails, as we see no basis for concluding on this record that the sentence that resulted was unreasonably long.

## IV.

For the foregoing reasons, the sentence is affirmed.